## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | |
|---|---|
| JOHN C.A. BAMBENEK, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 07-CV-2012 |
| ) | |
| JAMES A. WRIGHT, Executive Inspector ) | |
| General, GILBERT R. JIMENEZ, Deputy ) | |
| Inspector General for Investigations, and ) | |
| DONNA McNEELY, University Ethics ) | |
| Officer, ) | |
| ) | |
| Defendants. ) | |

### OPINION

This case is before the court for ruling on the Motion to Dismiss (#35) filed by Defendant Donna McNeely and the Motion to Dismiss (#38) filed by Defendants James A. Wright and Gilbert R. Jimenez. Following this court's careful consideration of the arguments of the parties and the applicable legal standard, Defendants' Motions to Dismiss (#35, #38) are GRANTED.

### FACTS

On June 14, 2007, Plaintiff, John C. A. Bambenek, filed his pro se Revised Verified Complaint (#31) against Defendants Wright, Jimenez and McNeely. Plaintiff stated that his civil rights claims arose under the United States and Illinois Constitutions, including the Fifth and Sixth Amendments to the U.S. Constitution, and that this court has subject matter jurisdiction under 42 U.S.C. § 1983. Plaintiff stated that Wright is the Executive Inspector General of the State of Illinois, Jimenez is the Deputy Inspector General for Investigations for the State of Illinois, and McNeely is the University Ethics Officer for the University of Illinois system. Plaintiff stated that each Defendant was being sued in his or her official capacity.

Plaintiff alleged that he is an employee of the University of Illinois at Urbana-Champaign.

His formal title is Research Programmer at the Coordinated Science Laboratory. This is an academic professional position. Plaintiff attached a copy of a Notification of Appointment to the Complaint. The Notification stated that it confirmed his appointment to the position from August 16, 2006 to August 15, 2007, at a specified annual rate of pay.

Plaintiff further alleged that, under the Illinois State Officials and Employees Ethics Act (5 Ill. Comp. Stat. 430/5-10), all employees of the State of Illinois and its agencies are required to undergo annual ethics training. Plaintiff alleged that this training is web-based and includes both a "teaching" section and a quiz to measure mastery of the material. In a footnote, Plaintiff stated that the "training" was 80 pages long. He also alleged that the "material has been substantially similar to previous years because the ethics law hasn't substantially changed." Plaintiff alleged that he completed this training on October 28, 2006. Plaintiff also alleged that the introduction to the online training reads as follows:

> This course should take you approximately 30 to 60 minutes to complete.
>
> Warning-The time that you spend and your activities in completing this course will be monitored. Your failure to read and review all of the program's subject matter may invalidate your Completion Certificate, result in your being required to complete additional ethics training and result in disciplinary action up to and including termination of employment and/or administrative fine.

Plaintiff alleged that, on December 15, 2006, Defendant Wright sent a letter to Plaintiff. Plaintiff attached a copy of the letter to his Complaint. The letter stated:

> Our records for your online training activity indicate that you

>apparently spent only 8.78 minutes in reviewing the program's training materials prior to completing its review quiz. Contrary to instructions, you appear to have failed to carefully read and review the subject matter contained in the program's Introduction and three Lessons, and therefore you have not appropriately complied with the training as required by law. Your Certificate of Completion and record of compliance have therefore been invalidated.
>
>You must complete the enclosed ethics training program and return its Certification form (last page of the program), bearing your signature, to your Ethics Officer no later than February 2, 2007. Your failure to complete this additional training on a timely basis, as well as any future failure to properly comply with this annual training requirement, will result in disciplinary action, up to [and] including termination of state employment. (Emphasis in original.)

Plaintiff also attached a copy of the Acknowledgement form he was required to sign. The form stated:

>I have carefully read and reviewed the content of the Ethics Orientation for Noncompliant Employees of the Agencies of the Illinois Governor program and I understand its subject matter. Furthermore, I acknowledge that I am aware that ethics training is an annual requirement under the State Officials and Employees Ethics Act and that I am expected to complete such training when scheduled by the state. I also acknowledge awareness that my failure to

>appropriately complete such future annual training on a timely basis
>may result in disciplinary action, up to and including termination of
>state employment.

The form included a signature line and additional lines for employee identification information. The form stated, "To be properly credited for participating in Ethics Training, please submit this form via US Postal Mail" to the University Ethics Office.

Plaintiff stated that he sent a letter to Wright on January 5, 2007. Plaintiff attached a copy of this three-page letter to his Complaint.[1] In the letter, Plaintiff stated that Wright's allegations that he did not complete his ethics training and had violated the law were "both factually and legally without merit." Plaintiff challenged the Acknowledgement form, stating that it required him to assert that he, in fact, had committed a crime "without benefit of a hearing, trial, seeing the evidence, or otherwise challenging your claims." With the letter, Plaintiff submitted a revised form. In his Complaint, Plaintiff alleged that the revised form stated that Plaintiff "completed the [additional] training but did not include a statement of confession for a crime that the Plaintiff did not commit."

Plaintiff alleged that he had two telephone conversations with Jimenez on January 22, 2007. Plaintiff alleged that Jimenez informed him that there were no appeals, no challenges, and no hearings allowed in response to the non-compliance letters. Jimenez also informed him that his revised form was not acceptable. Plaintiff alleged that Jimenez further informed him that the Acknowledgement form, which Plaintiff alleged was a coerced statement of confession, must be signed by February 2, 2007. Plaintiff alleged that Jimenez specifically stated that failure to sign the Acknowledgement would result in disciplinary action "up to and including termination." Plaintiff

---

[1] Plaintiff's letter stated that a courtesy copy had been sent to "the world."

alleged that Jimenez told him that the ethics law required "careful review of the material." Plaintiff alleged that Jimenez had stated in press interviews that Plaintiff and other employees were holding on to "cheat sheets." Plaintiff referred to a Chicago Sun Times article and provided a website citation for the article.

Plaintiff alleged that, because of his contract of employment, he has a "property interest of due process" and that his due process rights have been violated. Plaintiff also alleged that being decreed to have violated the ethics act "limits the Plaintiff's employment opportunities" and constitutes a violation of his "due process rights under the liberty interest as well." Plaintiff did not allege that his employment was actually terminated or affected in any way or that he actually signed any document to which he objected.

Plaintiff did allege, in Count 1, that, because Wright's letter was a summary declaration of guilt, he had been denied his right to notification of hearing, complaint and investigation. In Count 2, Plaintiff alleged that he was denied his right to a hearing. In Count 3, Plaintiff alleged he was denied his right to present evidence. In Count 4, Plaintiff alleged he was subjected to the enforcement of non-existent regulations because the instructions to the online training were "informational and not regulatory." In Count 5, Plaintiff alleged he was denied his right to see evidence. In Count 6, Plaintiff alleged he was subjected to an ex post facto regulation. In Count 7, Plaintiff alleged he was denied his right to appeal. In Count 8, Plaintiff alleged he was subjected to a vague regulation. In Count 9, Plaintiff alleged that the possible punishment to be imposed is beyond what is allowed in law. In Count 10, Plaintiff alleged that he was denied his due process right to the application of laws as written. In Count 11, Plaintiff alleged that his due process rights have been violated because enforcing a time limit has no connection to the state purpose. In Count 12, Plaintiff alleged that Defendants violated his due process rights because they attempted to coerce

his confession. Plaintiff stated that he was seeking the following relief:

> A declaration that the non-compliance letter, and any other document, notation, or instrument declaring Plaintiff and all others similarly situated is null and void;
>
> A permanent injunction preventing disciplinary actions being taken against Plaintiff and others similarly situated without benefit of due process;
>
> A declaration that all actions documented above by the Defendants is contrary to the Fifth, Sixth, and Fourteenth Amendments.
>
> An order demanding that all records, instruments or notations that indicate Plaintiff and all others similarly situated that indicate non-compliance on the basis of taking the training too fast be purged from state files;
>
> A permanent injunction preventing defendants from engaging in enforcement of ethics act violations without due process;
>
> An award of all costs relevant to bringing this suit;
>
> Compensatory damages for time lost, harm to the Plaintiff's character, emotional suffering and other harms in an amount reasonable to this court;
>
> Any such other relief that this Court may find reasonable.

On July 18, 2007, McNeely filed a Motion to Dismiss (#35) and Memorandum of Law in Support (#36). McNeely argued that Plaintiff's Complaint against her should be dismissed because

the Complaint contains no allegations of misconduct by her or the University. McNeely also argued that Plaintiff's Complaint should be dismissed because Plaintiff's claims against her are barred by the Eleventh Amendment, Plaintiff has not alleged a property or liberty interest that would give rise to due process rights, Plaintiff has not alleged a deprivation of a property or liberty interest, and Plaintiff's allegations do not give rise to claims under the Fifth Amendment self-incrimination clause, the Sixth Amendment, or the Ex Post Facto Clause.

On July 25, 2007, Wright and Jimenez filed a Combined Motion to Dismiss the Amended Complaint and Supporting Memorandum of Law (#38). They argued that Plaintiff's Revised Complaint, together with the attached exhibits, establish that he has no claim so that he has pled himself out of court. Wright and Jimenez also argued that Plaintiff's complaint seeks retrospective relief and does not establish an ongoing violation of federal law and therefore should be dismissed pursuant to the Eleventh Amendment.

Plaintiff has filed a Response to both Motions to Dismiss (#42, #43). Following this court's careful consideration of the arguments of the parties, this court agrees with Defendants that Plaintiff's Revised Verified Complaint (#31) must be dismissed with prejudice.

ANALYSIS

I.  STANDARD

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint, not the factual sufficiency. Szabo v. Bridgeport Mach., Inc., 249 F.3d 672, 675-76 (7th Cir. 2001). When ruling on a motion to dismiss, the court generally should only consider the allegations of the complaint. Centers v. Centennial Mortgage, Inc., 398 F.3d 930, 933 (7th Cir. 2005). The court must also accept the factual allegations as true and draw all reasonable inferences in favor of the plaintiff. See Centers, 398 F.3d at 933; see also Erickson v. Pardus, ___ U.S. ___,

127 S. Ct. 2197, 2200 (2007).

Working hand in glove with Rule 12(b)(6) is Rule 8(a) of the Federal Rules of Civil Procedure. Cler v. Ill. Educ. Ass'n, 423 F.3d 726, 729 (7th Cir. 2005). Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Erickson, 127 S. Ct. at 2200. In order to meet this requirement, the complaint must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson, 127 S. Ct. at 2200, quoting Bell Atl. Corp. v. Twombly, 550 U.S. ___, 127 S. Ct. 1955, 1964 (2007); see also E.E.O.C. v. Concentra Health Servs., Inc., ___ F.3d ___, 2007 WL 2215764, at *2 (7th Cir. 2007). In addition, the claim must be supported with enough facts, taken as true, that plausibly suggest that the plaintiff is entitled to relief. See Bell Atl. Corp., 127 S. Ct. at 1965; see also Concentra Health, 2007 WL 2215764, at *2. A plaintiff does not need to plead detailed factual allegations, but his "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp., 127 S. Ct. at 1964-65; see also Jennings v. Auto Meter Prods., Inc., ___ F.3d ___, 2007 WL 2120337, at *4 (7th Cir. 2007).

A plaintiff can plead himself out of court by alleging facts which show that he has no claim. Jackson v. Marion County, 66 F.3d 151, 153 (7th Cir. 1995). Therefore, if a plaintiff "pleads facts that show that his suit is time-barred or otherwise without merit, he has pleaded himself out of court." Tregenza v. Great Am. Commc'ns Co., 12 F.3d 717, 718 (7th Cir. 1993); Lovett v. Seniff, 277 F. Supp. 2d 896, 897 (N.D. Ind. 2003). A plaintiff's factual assertion in a complaint constitutes a judicial admission. See Keller v. United States, 58 F.3d 1194, 1198 n.8 (7th Cir. 1995). Moreover, a "plaintiff may plead himself out of court by attaching documents to the complaint that indicate that he or she is not entitled to judgment." Centers, 398 F.3d at 933, quoting Ogden Martin Sys. of

Indianapolis, Inc. v. Whiting Corp., 179 F.3d 523, 529 (7th Cir. 1999). A "court is not bound to accept the pleader's allegations as to the effect of the exhibit, but can independently examine the document and form its own conclusions as to the proper construction and meaning to be given the material." Centers, 398 F.3d at 933, quoting Rosenblum v. Travelbyus.com Ltd., 299 F.3d 657, 661 (7th Cir. 2002).

## II. DEFENDANT'S ARGUMENTS

### A. ELEVENTH AMENDMENT

In this case, Plaintiff has sued all three Defendants in their official capacities and Defendants have therefore argued that the suit is barred by Eleventh Amendment. The "Eleventh Amendment generally bars federal jurisdiction over lawsuits against state officials acting in their official capacities when the state is the real party in interest." Sonnleitner v. York, 304 F.3d 704, 717 (7th Cir. 2002). It is well settled that an official capacity claim is the equivalent of suing the governmental entity. Kentucky v. Graham, 473 U.S. 159, 165-67 (1985). The United States Supreme Court has stated that an official capacity suit "is not a suit against the official personally, for the real party in interest is the entity." Kentucky, 473 U.S. at 166 (emphasis in original). Therefore, state officials in their official capacities are immune from suit under the Eleventh Amendment. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 70-71 (1989); Joseph v. Bd. of Regents of the Univ. of Wis. Sys., 432 F.3d 746, 748 (7th Cir. 2005).

There are three exceptions to Eleventh Amendment immunity to lawsuits in federal court: (1) where Congress has abrogated the state's immunity from suit through an unequivocal expression of its intent to do so through a valid exercise of its power; (2) where a state has properly waived its immunity and consented to suit in federal court; and (3) where the plaintiff seeks prospective

equitable relief for ongoing violations of federal law under the Ex Parte Young doctrine.[2] Sonnleitner, 304 F.3d at 717. The first exception does not apply because the "Supreme Court has expressly held that Congress has not abrogated the states' immunity in § 1983 suits." Joseph, 432 F.3d at 748, citing Quern v. Jordan, 440 U.S. 332, 341-45 (1979). As far as the second exception, Plaintiff argues that sovereign immunity was abolished under Article XIII, Section 4 of the Illinois Constitution. However, the Constitution abolished sovereign immunity "except as the General Assembly may provide by law," and the Illinois Legislature subsequently immunized the State, including the Board of Trustees of the University of Illinois, from suit other than in the Illinois Court of Claims. Osteen v. Henley, 13 F.3d 221, 224 (7th Cir. 1993), citing 705 Ill. Comp. Stat. 505/8(d) (West 2006). Courts have uniformly held that Illinois did not waive sovereign immunity under the Eleventh Amendment by consenting to suit only in its own courts. See Osteen, 13 F.3d at 224; Kroll v. Bd. of Trs. of Univ. of Ill., 934 F.2d 904, 909-10 (7th Cir. 1991).[3] Plaintiff does argue, however, that he is seeking prospective equitable relief for ongoing violations of federal law. He contends that Defendant are arguing they should have "free license to behave as if the United States Constitution and federal law simply do not exist." This court will therefore consider Defendants' arguments that Plaintiff has not stated a claim for any kind of a constitutional violation in this case.

### B. DUE PROCESS

In his Response to Defendant Wright and Jimenez's Motion to Dismiss, Plaintiff states that

---

[2] This refers to Ex Parte Young, 209 U.S. 123, 159-60 (1908). The Ex Parte Young exception requires a "straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." Sonnleitner, 304 F.3d at 718, quoting Verizon Md. Inc. v. Public Serv. Comm'n of Md., 535 U.S. 635, 645 (2002).

[3] This court notes that Plaintiff relied on Crue v. Aiken, 204 F. Supp. 2d 1130 (C.D. Ill. 2002), to show that sovereign immunity cannot apply here. Sovereign immunity was not an issue in that case, however.

he is asserting a due process right, under both a property interest and a liberty interest, to have a hearing before "being summarily declared guilty of breaching the ethics law."[4]  The Due Process Clause of the Fourteenth Amendment applies only to deprivations of "life, liberty, or property." Upadhya v. Langenberg, 834 F.2d 661, 662 (7th Cir. 1987).  Therefore, a "plaintiff asserting the inadequacy of procedural safeguards must first establish that the defendant's actions deprived him of either a liberty or a property interest recognized by law."  Fenje v. Feld, 398 F.3d 620, 624 (7th Cir. 2005), citing Bd. of Regents v. Roth, 408 U.S. 564, 569 (1972).  This court agrees with Defendants that Plaintiff has no due process claim based upon the facts alleged in his complaint.

### 1. PROPERTY INTEREST

In response to Defendants' arguments that Plaintiff does not have a constitutionally protected property interest in this case, Plaintiff contends that he has a property interest in his continued employment and also has "a property interest in a hearing in which fines remain a possible punishment."  In support of their arguments, both Defendants and Plaintiff have provided this court with University of Illinois documents setting out the University's employment policies.

"To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it."  Roth, 428 U.S. at 577; Upadhya, 834 F.2d at 664-65.  A "legitimate claim of entitlement" means more than a high probability of renewal.  Roth, 428 U.S. at 578 n.16; Upadhya, 834 F.2d at 665.  "To establish a protectable property interest, a plaintiff must

---

[4] This court notes that, contrary to the lengthy and impassioned arguments included in Plaintiff's Responses to the Motions to Dismiss, the documents Plaintiff attached to his Revised Verified Complaint show that he has never been declared "guilty" of violating the Illinois Ethics Act.  Wright's letter to Plaintiff informed him that, because their records showed that Plaintiff completed the training in 8.78 minutes, he had "not appropriately complied with the training as required by law."  Plaintiff was therefore required to complete additional training.

be able to point to a substantive state-law predicate creating that interest." Omosegbon v. Wells, 335 F.3d 668, 674 (7th Cir. 2003), citing Roth, 408 U.S. at 577. In the employment context, the Seventh Circuit has generally required a plaintiff to show that the terms of his employment provide for termination only "for cause" or otherwise evince "mutually explicit understandings" of continued employment. Omosegbon, 335 F.3d at 674. Accordingly, "[a] property interest is not established by general statements in handbooks, appointment documents or elsewhere that an employee will be judged based on some 'criteria.'" Omosegbon, 335 F.3d at 674-75, quoting Colburn v. Trs. of Ind. Univ., 973 F.2d 581, 589 (7th Cir. 1992). The Seventh Circuit also stated that "a discretionary re-appointment system could never serve as grounds for a property interest unless 'an employer's discretion is clearly limited so that an employee cannot be denied employment unless specific conditions are met.'" Omosegbon, 335 F.3d at 675, quoting Colburn, 973 F.2d at 589 (emphasis added).

In both Omosegbon and Upadhya, the Seventh Circuit concluded that a non-tenured professor did not have a protectable property interest in his employment. Omosegbon, 335 F.3d at 674-75; Upadhya, 834 F.2d at 664; see also Weinstein v. Univ. of Ill., 811 F.2d 1091, 1097-98 (7th Cir. 1987). In Upadhya, the court stated that "a professor serving on a series of annual appointments, without an entitlement to renewal founded on state law, has no property interest in his position." Upadhya, 834 F.2d at 664. In Omosegbon, the court found that the plaintiff was subject to a "discretionary re-appointment system" and therefore failed to establish a protectable property interest. Omosegbon, 335 F.3d at 674-75. In Bant v. Bd. of Trs. of Univ. of Ill., 2006 WL 91327 (C.D. Ill. 2006), the plaintiff was an academic professional employed on an annual contractual basis. Because he was a long-term employee, he was entitled to one year of notice prior to termination and also had the right to appeal his termination. Bant, 2006 WL 91327, at *2. This

court, relying on Upadhya, concluded that the plaintiff had no property interest in his position and dismissed his due process claim. Bant, 2006 WL 91327, at *4.

Plaintiff argues that the Seventh Circuit cases cited by Defendants all involved tenure track faculty and do not apply to him because he is an academic professional. He contends that non-tenured "probationary" faculty and academic professionals are not similar to each other "simply because they get notices on the same schedule." Plaintiff contends that Bant was therefore incorrectly decided. In making this argument, Plaintiff has pointed out that the rights conferred by the documents provided to the court are a right to 12 months notice of non-reappointment, a right to appeal, and a right to relocation assistance.

This court concludes that Upadhya and Omosegbon are applicable to this case. The reasoning that discretionary annual appointments do not create a protectable property interest is the same whether the employee is a probationary non-tenured professor or an academic professional. Accordingly, Bant was correctly decided and the fact that Plaintiff is entitled to 12 months notice of non-reappointment and has an appeal process available to him does not change the fact that he is employed on an annual contractual basis and has no property interest in his position. See Bant, 2006 WL 91327, at *4.

This court also must reject Plaintiff's contention that he has a protectable property interest because of the possibility of a fine.[5] "'[P]urely dignitary or otherwise nonpecuniary dimensions of employment' are not property interests protected by the due process clause of the Fourteenth Amendment." Bordelon v. Chicago Sch. Reform Bd. of Trs., 233 F.3d 524, 530 (7th Cir. 2000), quoting Swick v. City of Chicago, 11 F.3d 85, 87 (7th Cir. 1993). It is clear that the fact that there

---

[5] This court notes that Plaintiff has acknowledged that the law does not appear to grant the Executive Inspector General authority to levy fines against the Plaintiff.

is some purely speculative possibility of a fine does not give Plaintiff a constitutionally protected property interest.

## 2. NO DEPRIVATION

This court has concluded that Plaintiff does not have a constitutionally protected property interest. However, this court additionally notes that it agrees with Defendants that Plaintiff has not shown any deprivation which would trigger any rights of due process. The factual allegations in Plaintiff's Complaint, as well as the exhibits attached to the Complaint, show that Plaintiff has not been disciplined or discharged. Plaintiff has essentially alleged that he had a due process right to some type of notice, investigation and hearing before the Inspector General could direct him to complete additional training or require him to sign an Acknowledgement stating that he had completed the additional training. In his Response to Defendant McNeely's Motion to Dismiss (#42), Plaintiff has specifically acknowledged that the "discipline assigned" was "redoing the ethics training."

A plaintiff must show "some economic loss from the [defendant's] actions, or at least establish an identifiable impact on his future income or economic benefits," to have a deprivation of property interest claim. Bordelon, 233 F.3d at 530; see also Lifton v. Bd. of Educ. of City of Chicago, 416 F.3d 571, 578 (7th Cir. 2005). In this case, there are no allegations that Plaintiff received any deprivation relative to his employment. See Atterberry v. Sherman, 453 F.3d 823, 827 (7th Cir. 2006) (the plaintiff was not deprived of a cognizable constitutional property interest where he was not subjected to a reduction in salary or rate). Instead, Plaintiff has alleged, and argued, that he was required to undergo additional training and was told that he was required to sign an Acknowledgement, which included a warning about possible discipline, up to and including termination of employment. These allegations show that Plaintiff was given notice regarding what

was required of him. Because nothing happened to him regarding his employment when the notice was sent, he cannot have a due process claim. See Piggee v. Carl Sandburg College, 464 F.3d 667, 674 (7th Cir. 2006) (Seventh Circuit rejected the plaintiff's argument that her due process rights were violated by a notice prohibiting certain types of conduct, and warning her that further actions could lead to disciplinary measures up to and including discharge, where nothing else adverse took place); Lifton v. Bd. of Educ. of City of Chicago, 318 F. Supp. 2d 674, 678 (N.D. Ill. 2004), aff'd, 416 F.3d 571 (7th Cir. 2005) (no right to due process before the issuance of a Warning Resolution). Based upon Plaintiff's allegations, this court concludes that Plaintiff has fallen far short of alleging a deprivation which would trigger any rights of due process.

### 3. LIBERTY INTEREST

Plaintiff argues that his liberty interest has been infringed because he has been declared and public documents have been created to establish that he has violated the Ethics Act. In his Complaint, he alleged that he was deprived of his liberty interest because "[i]n several press interviews, Defendant Jimenez further asserted that Plaintiff and others similarly situated were holding on to cheat sheets." Plaintiff specifically referred to an article in the Chicago Sun Times and provided a website citation to the article. Defendant McNeely attached a copy of the Sun Times article to her Motion to Dismiss. This article does not refer to Plaintiff at all.[6] In his Response, Plaintiff acknowledged that the article he cited made no mention of him, personally. However, he has nevertheless argued that his reputation regarding "being trustworthy" has been harmed and that "he has a liberty interest in maintaining his good name and ability to work in his industry free from the stigma of being declared guilty of violating the ethics law [without] the required hearing."

---

[6] The article refers only to professors at Southern Illinois University.

It is well settled that an individual has no cognizable liberty interest in his reputation; consequently, when a state actor makes allegations that merely damage a person's reputation, no federally protected liberty interest has been implicated. Paul v. Davis, 424 U.S. 693, 711-12 (1976); Dupuy v. Samuels, 397 F.3d 493, 503 (7th Cir. 2005). Therefore, "any stigmatic harm must take concrete forms and extend beyond mere reputational interest." Omosegbon, 335 F.3d at 675, citing Paul, 424 U.S. at 711-12. In the employment context, the Seventh Circuit has specifically stated that "[i]t is not enough that the employer's stigmatizing conduct has some adverse effect on the employee's job prospects." Bordelon, 233 F.3d at 531. The Seventh Circuit held that "the employee must show that the stigmatizing actions 'make it virtually impossible for the employee to find new employment in his chosen field.'" Bordelon, 233 F.3d at 531. In this case, Plaintiff's allegations show that he remains employed in his academic professional position. Therefore, "he cannot establish a deprivation of his freedom to pursue his chosen occupation, and his liberty interest claim must fail as a matter of law." See Bordelon, 233 F.3d at 531. Because Plaintiff has only alleged harm to his reputation which "limits the Plaintiff's employment opportunities," this court agrees with Defendants that Plaintiff has not alleged a protectable liberty interest.

## C.  REMAINING CONSTITUTIONAL CLAIMS

Plaintiff has alleged that his constitutional rights under the Fifth Amendment, Sixth Amendment, and Ex Post Facto Clause of the United States Constitution have been violated. However, Plaintiff's own allegations and the documents attached to his Complaint show that all that has happened is that Plaintiff was required to complete additional training and was told he was required to sign an Acknowledgment stating that the additional training was completed. Although Plaintiff has alleged, and has argued at length, that this Acknowledgement was actually a "coerced statement of confession," this court concludes that the document itself does not support that

characterization. In any case, Plaintiff has not alleged that he has been subjected to any kind of criminal charges or prosecution for violation of the Illinois Ethics Act. In his Responses to the Motions to Dismiss, Plaintiff concedes that he has not been prosecuted and that, under the Illinois Ethics Act, training violations are not misdemeanor offenses subject to prosecution.

The statutory provision at issue provides that "[e]ach officer, member, and employee must complete, at least annually beginning in 2004, an ethics training program conducted by the appropriate State agency." 5 Ill. Comp. Stat. 430/5-10 (West 2006). The statute further states that "[e]ach Inspector General shall set standards and determine the hours and frequency of training necessary for each position or category of positions." 5 Ill. Comp. Stat. 430/5-10 (West 2006). A violation of this provision is not a crime and does not result in criminal penalties. See 5 Ill. Comp. Stat. 430/50-5 (West 2006).

It is well settled that there is no basis for § 1983 liability based upon the Self-Incrimination Clause of the Fifth Amendment unless there is a "criminal case." Sornberger v. City of Knoxville, Ill., 434 F.3d 1006, 1024-25 (7th Cir. 2006), citing Chavez v. Martinez, 538 U.S. 760, 767 (2003). Plaintiff protestations, without citation to any authority, that he should not have been required to sign an "admission of non-compliance" and that this requirement violated his rights against self-incrimination are not persuasive. The applicable case law clearly states there cannot be a Fifth Amendment claim unless there is a criminal prosecution. Plaintiff has not alleged a criminal prosecution and, in fact, has conceded that no prosecution is possible under the Ethics Act. Therefore, Plaintiff has no Fifth Amendment claim.

As far as Plaintiff's Sixth Amendment claim, Defendants are correct that "the Sixth Amendment's protection does not come into play until the government has committed itself to prosecution." Kladis v. Brezek, 823 F.2d 1014, 1018 (7th Cir. 1987). Therefore, for the same

reasons, Plaintiff has no claim under the Sixth Amendment. Furthermore, Plaintiff clearly has no claim under the ex post facto clause. The Constitution's two ex post facto clauses prohibit the Federal Government and the States from enacting laws with certain retroactive effects. Stogner v. Cal., 539 U.S. 607, 610 (2003). Thus, the ex post facto clause prohibits punishment pursuant to a law with retroactive application. Sides v. City of Champaign, ___ F.3d ___, 2007 WL 2255211, at *4 (7th Cir. 2007). A law violates the ex post facto clause "if it punishes as criminal conduct an act that was innocent when done, or makes more burdensome the punishment for a crime after its commission." O'Grady v. Vill. of Libertyville, 304 F.3d 719, 723 (7th Cir. 2002). Moreover, the Seventh Circuit has made clear that "the Ex Post Facto Clause only applies to criminal laws." Flores-Leon v. I.N.S., 272 F.3d 433, 440 (7th Cir. 2001). Therefore, again, because Plaintiff has not been subjected to a criminal prosecution, this claim fails.

## CONCLUSION

For all of the reasons stated, this court concludes that Plaintiff has pleaded himself out of court. Based upon the allegations of his complaint, and the documents attached to the complaint, it is clear that Plaintiff has not alleged any violation of federal law for which he could be granted prospective equitable relief. Therefore, no exception to the Eleventh Amendment applies here and Plaintiff's claims against Defendants, sued in their official capacities, are barred.

Moreover, for the same reasons, Plaintiff's complaint completely fails to allege any constitutional violations for which he could obtain relief under 42 U.S.C. § 1983. Therefore, Defendants are correct that Plaintiff's Revised Verified Complaint, together with the attached exhibits, establish that he has no claim and his Complaint must therefore be dismissed for failure to state a cause of action. Because of these conclusions, this court does not need to address the additional reasons for dismissal argued by Defendants.

IT IS THEREFORE ORDERED THAT:

(1) Defendants' Motions to Dismiss (#35, #38) are GRANTED.

(2) Plaintiff's Revised Verified Complaint (#31) is dismissed with prejudice.

(3) This case is terminated.

ENTERED this 2nd day of October, 2007

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE